**People of the State of Illinois, Defendant in Error, v. Charles E. Glasco, Plaintiff in Error.**

**Gen. No. 50,172.**

First District, Third Division.

January 13, 1966.

Harley A. Stephenson, of Chicago, for plaintiff in error.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Frank V. Salerno, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

Defendant was convicted of burglary with intent to rape and sentenced to not less than two nor more than ten years in the state penitentiary. He contends that the state did not prove the required intent beyond a rea-

sonable doubt; that as an indigent, the defendant was discriminated against because he could not post bond and therefore had a deputy sheriff seated next to him throughout the trial of the case which, he contends, was prejudicial in a jury trial; that the court erred in admitting certain testimony as to subsequent events involving the accused; and that a statement allegedly introduced for impeachment purposes was irrelevant and prejudicial.

Doretha Shores, the prosecutrix, lived in a two bedroom house in Robbins, Illinois, with her three children— a 17-year-old son named Craig Hardeman, a daughter, Claudette, age 14, and another son, Jeffery, age nine. She occupied one bedroom and the children slept in the other. She testified that on the morning of January 14, 1962, at about 5:00 a. m., the defendant broke into her home, went to her room, and said, "Move over, bitch, I'm going to rape you." At that point they heard Craig in the living room and the prosecutrix ran in there, followed by the defendant. A fight ensued between Craig and the defendant, and the prosecutrix, fearing for Craig, sent him back to his room. Thereupon she and the defendant returned to her bedroom, where she had sexual relations with him.

According to the prosecutrix, the struggle between Craig and the defendant took about ten minutes, the subsequent activities in the bedroom three to five minutes, and the defendant left at about 5:30 a. m., saying, "Don't call the police." At 7:30 a. m., the prosecutrix, who had no telephone, went a block and a half to the home of Cora Bryant, a friend of ten years, to call the police. The latter testified that the prosecuting witness looked extremely nervous and told her she had been raped.

The court also admitted into evidence for the purpose of identification the testimony of the prosecutrix and Craig that the defendant again appeared on the porch of their home on January 19, 1962 at 2:00 a. m. Accord-

447

ing to Craig, Glasco on that reappearance kicked and pounded on the door for two or three minutes, partially breaking it before leaving. The prosecutrix testified that she was near the front door at the time, that the living room lights were on, and that it was light outside because there was fresh snow on the ground. They both claimed they could see that it was the defendant through the transparent glass panes in the door.

Craig Hardeman identified the defendant on the street in Robbins, Illinois, on January 20th. He summoned the police, who arrested the defendant shortly afterward, and both Doretha and Craig identified Glasco at separate police lineups on January 21, 1962.

■■ On the question of reasonable doubt, the crime charged is burglary, defined as follows: "A person commits burglary when without authority he knowingly enters . . . a building . . . with intent to commit therein a felony or theft." Ill Rev Stats c 38, § 19–1 (1963). The question therefore is whether at the time of the breaking into the house, the defendant had the felonious intent to commit rape. The crime of burglary with intent to commit rape does not require that rape be proved. The state's failure to prove rape or to show lack of acquiescence beyond a reasonable doubt is not relevant. Similarly, it is not important that the prosecutrix waited two hours before making a complaint. There was sufficient evidence in the testimony of the prosecuting witness as to the defendant's language and conduct when in her bedroom and his subsequent fight with Craig to support the jury's finding that he had the requisite intent when he broke into the house.

■ The defendant also contends that he was discriminated against in that as an indigent without bail bond, he was attended by a sheriff's deputy who sat at the counsel table throughout the trial. While this method of handling a prisoner might in certain instances lead to undue prejudice, it does not appear that in the instant

448

case the defendant's right to a fair trial was impaired. Surveillance of a defendant on trial must be governed in each instance by a sound discretion based on the need for the protection of the judge and others in the courtroom, while at the same time recognizing that a defendant in an extraordinary case may be prejudiced by an undue showing of apprehension on the part of the court or guards.

 Defendant argues that the testimony as to his subsequent appearance at the prosecutrix's home was inadmissible, and that the reception of that testimony in evidence so prejudiced the jury that he was denied a fair trial. Evidence of other independent offenses is generally inadmissible in a criminal case, "not because it has no appreciative, probative value, but because it has too much. . . ." People v. Lehman, 5 Ill2d 337, 125 NE 2d 506. An exception exists where the evidence tends to aid in the identification of the defendant as the person who committed the particular crime for which he is being tried.

██ Defendant contends that the identity exception is inapplicable under the circumstances of his alleged second appearance at the Shores' home. He argues that evidence of a subsequent offense is barred unless the later conduct is an integral part of the original crime. This is a narrower construction of the exception than that which the courts have given it. Evidence of subsequent offenses has been allowed to bolster identification where there is a logical relationship between the original crime and the later misconduct. People v. Lewis, 30 Ill2d 617, 198 NE2d 812. In the instant case, the alleged burglary for which the defendant was tried and the second appearance in which he attempted to break down the front door are sufficiently related to warrant the introduction of testimony that it was the defendant who committed the second offense. This evidence was admissible for the purpose of corroborating the prosecutrix's identification of

the defendant as the person who burglarized her home five days previously.

Defendant argues that a statement which was read by the prosecution allegedly for impeachment purposes was irrelevant and prejudicial. The defendant testified on cross-examination that on the morning of January 19th he was at Skin's Lounge at 2:00 a. m.; that he had arrived at 10:30 or 11:00 p. m. and stayed until 3:30 a. m. This testimony was contrary to that of the prosecutrix and her son, who had testified that the defendant reappeared at their home at that time. The state then questioned the defendant about a prior written statement allegedly made by him to the police concerning events of the 18th and early morning of the 19th. Counsel for the defendant objected to certain questions in the statement as irrelevant. The court expressed doubt as to their propriety, but allowed the reading of the statement in the presence of the jury. The statement follows:

"Q. What did you do January 18, 1962?
A. I got up around 12:00, went to the pool room and went for my compensation, came back to the pool room and stayed there until 7:00 p. m. After 7:00 p. m. I met Medill Jones, went to the Cadillac Club and had a couple of drinks. Then we went back to the pool room and stayed there until 12:00 or 12:30 a. m. The pool room closed and Curtis Brown and I walked home together, he lived up the street from me.
Q. Did you go in the house at this time?
A. Yes.
Q. Did you leave the house any more on this night?
A. Yes. I asked my mother for 30¢ and went to the tavern across the street and got cigarettes and came right back."

The state argues that it was laying a foundation for the impeachment of defendant's testimony as to his

whereabouts at the time of the alleged return to the prosecutrix's home. The court said that the third question and answer was the only part of the statement which had any value for impeachment purposes, but the defendant *denied* making the third answer. At that point the state, apparently content with having had the statement read in the presence of the jury, with whatever inferences as to defendant's character the jury might derive therefrom, dropped the issue. Defendant's counsel asked the court to declare a mistrial and when that was denied, he urged the trial court to instruct the jury to disregard the statement in its entirety. The court failed to do so.

■ The prosecution's reading of the written statement under the guise of impeachment was reversible error. The first question and answer were of a substantially prejudicial nature and the events therein described bore no relation to the defendant's alleged reappearance at the prosecutrix's home. Thus that part of the statement should not have been allowed as a foundation for impeachment. The error was compounded by the state's failure to make any proof of the veracity of the statement after the defendant denied giving the third answer.

The judgment is reversed and the cause is remanded with directions to grant a new trial, and for such other and further proceedings as are not inconsistent with the views herein expressed.

Judgment reversed and cause remanded with directions.

SULLIVAN, P. J. and DEMPSEY, J., concur.