THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LARRY DIXON, Defendant-Appellant.

First District (1st Division)    No. 80-2121

Opinion filed February 22, 1982.—Rehearing denied March 15, 1982.

Ralph Ruebner and Kenneth L. Jones, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and Edward F. Cozzi, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

After a jury trial defendant Larry Dixon was found guilty of three counts of armed robbery (Ill. Rev. Stat. 1975, ch. 38, par. 18—2(a)) and two counts of unlawful restraint (Ill. Rev. Stat. 1975, ch. 38, par. 10—3), and received an extended sentence of imprisonment of 45 years for each count of armed robbery and six years for each count of unlawful restraint (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—2), the terms to run concurrently. On appeal defendant raises the following issues: (1) whether he was denied due process of law when the State, after indictment and without notice to him, showed prosecution witnesses photographs of a lineup which they had not previously viewed; (2) whether he was denied his right to have counsel of his own choice represent him; (3) whether the trial court erred in excluding defense evidence concerning the identification testimony of three State witnesses and restricting defense evidence as to the defendant's physical condition at or near the time of the offense; and (4) whether the sentences imposed must be vacated or alternatively, whether this cause must be reversed and remanded so that defendant can make a meaningful election as to which code to be sentenced under.

For the reasons set forth herein the judgment of the circuit court is affirmed.

At trial, Valerie Murphy Hall testified that on September 4, 1976, she was riding with her boyfriend Darrell Hall in his car. He subsequently became her husband. They flagged down a gold Cadillac which they believed was occupied by friends of her brother. The driver of the car got out and asked her for a match. He then put a gun to her head, after which he and the other occupant of the Cadillac forced their way into the Hall car. She identified the gunman as Larry Dixon, and the other man as Billups. Dixon and Billups forced Darrell to drive around Harvey, Illinois, for a while, as Dixon sat next to her and held a gun to her side. Then Darrell was put in the back seat and Dixon got into the back seat with him. Billups began to drive. When they got to Robbins, Illinois, Darrell was placed in the trunk of the car. Dixon again sat beside Valerie and held

the gun to her side. Billups drove to a Clark gas station at 144th and Crawford. There were three people standing by the pump. Billups and Dixon got out of the car, and she heard Dixon say, "It's a stickup." After the Hall car left the station they again drove to Robbins, where they were stopped by the police. Defendant jumped out of the car, jumped over a fence and began running. Valerie saw defendant standing next to her shortly after she had been handcuffed by the police. The testimony of Darrell Hall corroborated that of Valerie Hall. In addition, Hall testified that he was in the back seat with Larry Dixon for about 10 minutes on the night of the incident.

Kevin Burke testified that on September 4, 1976, between 11 p.m. and midnight he was working as a gas attendant at a Clark gas station. A 1970 black Ford pulled into the station. He went to service another car that had pulled into the station, and his brother Michael went to service the black car. His brother called him over. His brother's friend Eric Plane was standing beside his brother, as were two other men. The station was well lit. One of the men had a gun which he pulled out of his pocket and showed to Burke. Burke identified defendant as the man who had the gun. Defendant and the other man robbed him. After he was robbed, one of the men went inside with his brother and took several cartons of cigarettes. The men then got back into the car where a girl was and left. He followed them in his car until he saw a Crestwood police car. He told the officer what had happened and that the car was headed east on the Midlothian Turnpike. On October 7, 1976, he viewed a lineup at the Markham police station where he identified numbers one and seven as the gunmen. The testimony of Michael Burke corroborated that of Kevin Burke. Michael Burke did not testify as to any identification.

Eric Plane testified that he and Michael Burke had been robbed by two men at a Clark gas station on September 4, 1976, and that one of the men had a gun. He identified defendant as the man with the gun. When he viewed a lineup in October 1976, he identified number seven (the defendant) as one of the men who had robbed him.

Bernard Armel, attorney, testified that he was hired by and did represent defendant in September 1976. He first saw defendant at the Markham police department in September 1976, at which time defendant was shaking and appeared weak. He observed that defendant wore a colostomy bag.

Initially, defendant contends that he was denied due process of law when after his indictment and without notice to him, prosecution witnesses Valerie Murphy Hall and Darrell Hall were shown photographs of a lineup which they had not attended. The Halls viewed the photographs in the State's Attorney's office shortly before the trial began. Defense counsel was not present at that time and learned of the photographic

viewing during cross-examination of Valerie Hall. The Halls each identified number seven (defendant herein) as the man with the gun in the instant action. The Halls also testified that they had previously identified defendant in October 1976, when they appeared in court and signed complaints. Defendant urges that since the Halls had not been present at the lineup, their viewing of the lineup photographs must be considered the equivalent of a corporeal lineup. He contends that since defense counsel was not present when the Halls viewed the photographs, he was denied the right to counsel at the equivalent of a post-indictment lineup. Defendant cites no authority for this position, but relies instead on *Kirby v. Illinois* (1972), 406 U.S. 682, 32 L. Ed. 2d 411, 92 S. Ct. 1877, and *Stovall v. Denno* (1967), 388 U.S. 293, 18 L. Ed. 2d 1199, 87 S. Ct. 1967, wherein the Supreme Court held that an accused has a right to counsel at a post-indictment lineup. Defendant acknowledges that the United States Supreme Court held in *United States v. Ash* (1973), 413 U.S. 300, 37 L. Ed. 2d 619, 93 S. Ct. 2568, that no right to counsel exists at a post-indictment photographic identification, but urges that under the facts and circumstances of this case, where the viewing took place in the State's Attorney's office with several other people present, he had the right to have counsel present to insure the fairness of the procedure, and in the absence of counsel at the viewing, his motion to suppress the identification testimony of the Halls should have been granted. (*Moore v. Illinois* (1977), 434 U.S. 220, 54 L. Ed. 2d 424, 98 S. Ct. 458; *People v. Robinson* (1970), 46 Ill. 2d 229, 263 N.E.2d 57.) Defendant claims that the error was compounded by the State's failure to disclose the pretrial photographic identification in response to his motion for discovery.

The State contends that the trial court properly denied defendant's motion to suppress the identification testimony of Valerie and Darrell Hall. In reliance on *United States v. Ash* the State claims that the sixth amendment does not grant an accused the right to have counsel present when the government conducts a post-indictment photographic display containing a picture of the accused for the purpose of allowing a witness to attempt an identification of the offender. See *People v. Shorter* (1978), 59 Ill. App. 3d 468, 375 N.E.2d 513.

■■ We agree with defendant that both *Kirby* and *Stovall* correctly state the law that an accused is entitled to have counsel present at a post-indictment lineup; however, neither *Kirby* nor *Stovall* actually involved a lineup or a photographic display, and the record reflects that defendant herein was in fact represented by counsel at the lineup in question. Defendant urges, however, that in addition to being represented by counsel at the lineup, he should also have been represented by counsel when the Halls viewed the photographs of the lineup. This issue has been passed on by the United States Supreme Court in *United States v. Ash*, where the

Supreme Court declined to extend the right to counsel to a portion of the prosecutor's trial preparation interview with witnesses, finding that defense counsel may also conduct photographic displays with potential witnesses. The Supreme Court held that since the accused himself is not present at the time of the photographic display, the accused has no right to have his counsel present. Defendant's claim that he was prejudiced by the State's failure to disclose the pretrial photographic identification is also without merit, for the record reveals that defendant was aware of the lineup, was represented by counsel at the lineup, and had been given the names of the Halls as possible prosecution witnesses in response to his motion for discovery. Moreover, defendant admits in his brief that he had also been tendered the photographs of the lineup. Therefore, defendant was not precluded from conducting his own photographic display with the Halls. We also do not find the *Moore* case supportive of defendant's position. *Moore* concerned the in-court identification of an accused at a preliminary hearing at which the accused was not represented by counsel. Defendant has not alleged that he was not represented by counsel when the Halls identified him in court in October 1976, and that issue is not before this court. The testimony of both Valerie and Darrell Hall was that they spent considerable time in the actual presence of defendant during the alleged criminal acts, and that they had identified defendant in court on a previous occasion, thus there was sufficient independent basis for their in-court trial identification of defendant, and the trial court did not err when it denied defendant's motion to suppress the identification testimony of the Halls. *People v. Shorter.*

■■ Secondly, defendant contends that he was denied the right to counsel of his choice when the trial court denied his request to substitute Bernard Armel for his trial counsel during the course of the trial of this matter. Bernard Armel had represented defendant in this case from September 1976, until he withdrew from the case in 1978. Mr. Armel was not present at the time the request was made during the third day of trial, and the State contends that the trial court did not abuse its discretion in denying said request on the grounds that it was untimely and because of the efforts of trial counsel on defendant's behalf. (*People v. Solomon* (1962), 24 Ill. 2d 586, 182 N.E.2d 736.) Moreover, defendant did not raise this issue in his written motion for a new trial, and the law in Illinois is that a point not raised in a written motion for a new trial is deemed to have been waived and is not subject to review. *People v. Jackson* (1981), 84 Ill. 2d 350, 418 N.E.2d 739.

■■ Defendant's third contention is that the trial court erred in excluding the testimony of Bernard Armel relative to the identification testimony of Kevin Burke, Eric Plane, and Michael Burke. The offer of proof made by defense counsel was that Mr. Armel, the previous defense counsel, would

have testified that he was defendant's attorney and was present at a lineup on October 7, 1976, and that defendant was in the seventh position at said lineup. Armel would have testified further that at said lineup Plane identified the person in the sixth position, Kevin Burke identified no one, and Michael Burke identified numbers one and seven. The trial court excluded the proffered testimony on the grounds that it was hearsay, and that no foundation had been laid for impeachment. Defendant, in reliance on *People v. Rogers* (1980), 81 Ill. 2d 571, 411 N.E.2d 223, urges that Armel's testimony went to the credibility of the witnesses, and should have been admitted. In *Rogers* the Illinois Supreme Court held that once a witness testifies about an out-of-court identification at trial, a third person should be allowed to testify that he heard or saw the witness make the identification. This would not constitute hearsay since both the witness and the third party would be subject to cross-examination concerning the out-of-court identification. The trial court also limited Armel's testimony concerning the physical condition and appearance of defendant subsequent to September 4, 1976, ruling that it was immaterial in seeking to establish his condition on the date of the incident. Defendant urges that Armel's testimony, that he saw defendant shortly after the incident and that defendant had a colostomy bag at that time, was material and probative of the issue of defendant's identification since it was unlikely that he could have been the man the police chased.

■■ The State urges that the *Rogers* decision should not apply to the instant issue as *Rogers* allows for the corroboration of an out-of-court identification but not for its impeachment. We do not agree. The *Rogers* case clearly sets forth the rules that should govern the admissibility of third-party testimony concerning out-of-court identification, and Armel's testimony should have been admitted under the reasoning set forth in *Rogers*. However, in light of the overwhelming evidence against defendant introduced at trial, and in light of defense counsel's suggestion at the time of his offer of proof that Armel had gotten Kevin Burke and Michael Burke mixed up and did not know Kevin from Michael, we do not find that defendant was prejudiced by the exclusion of Armel's testimony on this matter. Defendant did not raise the issue of the limitation of Armel's testimony concerning his appearance and physical condition at their first meeting in September 1976, in his written motion for a new trial, and this issue is deemed to have been waived and is not subject to review. *People v. Jackson.*

Defendant's final contention is that the sentence imposed must be vacated or this cause must be reversed and remanded so that he can make a meaningful election as to which code to be sentenced under. At the time of sentencing defendant was allowed to elect to be sentenced under the law in effect at the time of the offense or the law in effect at the time of

sentencing, after the court explained to him the difference between the two sentencing laws. He elected to be sentenced under the new law. He urges that his election was made in reliance on the validity of section 5—5—4.1 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—4.1) (the modification-of-sentence provision), which the Illinois Supreme Court subsequently held invalid in *People v. Cox* (1980), 82 Ill. 2d 268, 412 N.E.2d 541. Defendant asks this court to invalidate section 5—8—2 (Ill. Rev. Stat. 1979, ch. 38, par. 5—8—2) (the extended-term provision) in light of the *Cox* decision. Defendant claims that in light of *Cox*, sentencing him under section 5—8—2 violated his right to due process under the Illinois Constitution. His argument is premised on his assessment of the legislative intent in enacting these two sections which he claims envisioned that any sentences imposed under section 5—8—2 would be tempered on appeal by the now void section 5—5—4.1. Defendant further argues that if the validity of section 5—5—4.1 had been upheld this court would have been empowered to review the sentence imposed as if it were sitting as the sentencing court. Since this court does not have the power defendant anticipated that it would have at the time he made his election, he urges that the election was not meaningful, and that he must be allowed to make a new election if the validity of section 5—8—2 is upheld.

The State cites section 8—4—1 (Ill. Rev. Stat. 1979, ch. 38, par. 1008—4—1) as supportive of its position that the invalidity of section 5—5—4.1 does not affect the validity of section 5—8—2. Section 8—4—1 provides for the severability of invalid provisions of the Code from other provisions of the Code which can be given effect without the invalid provision. The State urges that sections 5—5—4.1 and 5—8—2 are not directly dependent on each other, and that the nature, character and extent of the penalties for a particular offense are matters for the legislature. *People v. Smith* (1958), 14 Ill. 2d 95, 150 N.E.2d 815.

■■ We agree with the State that the invalidity of section 5—5—4.1 does not affect the validity of section 5—8—2. Section 5—5—4.1 was held invalid because it infringed upon the court's exclusive power to regulate judicial review. (*People v. Cox.*) The reasoning expressed in *Cox* does not apply to section 5—8—2, for the nature, character, and extent of the penalties for a particular criminal offense are matters for the legislature and not the judiciary. (*People v. Smith.*) Moreover, section 5—8—2 can be given effect without the application of the invalid section 5—5—4.1. In enacting section 8—4—1 (the severability provision) the legislature clearly intended that the invalidity of one provision of the Code would not invalidate any other provision unless the application of another provision depended upon the application of an invalid provision. (Ill. Rev. Stat. 1979, ch. 38, par. 1008—4—1.) The law in Illinois is that a statute enjoys a

strong presumption of constitutionality, and the burden of showing the invalidity of a statute is on the party challenging the enactment. (*People v. La Pointe* (1981), 88 Ill. 2d 482.) We do not find that defendant has met this burden, or that defendant's right to due process was violated because defendant was sentenced under the extended-term provision. We observe from the record that defense counsel stated that he had explained the changes in the law to defendant and that defendant elected to be sentenced under the new law. The court thereafter explained the sentencing alternatives to defendant, and defendant personally elected on the record to be sentenced under the new law. The record also discloses that before imposing sentence the trial court considered that defendant's conduct had threatened serious physical harm to a number of people, defendant's extensive prior criminal record and defendant's prior conviction for armed robbery, that defendant had jumped bond in this matter and had been returned to court involuntarily, defendant's potential for being a law-abiding citizen, and the concern of defendant's family for him. The record supports the State's contention that defendant made a meaningful election to be sentenced under the new law, and it is pure speculation on the part of defendant to suggest that had the validity of section 5—5—4.1 been upheld, a review of his sentence might have resulted in a lower sentence.

For the reasons set forth herein the judgment of the circuit court is affirmed.

Affirmed.

GOLDBERG and O'CONNOR, JJ., concur.