THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ALFRED ATKINS, Defendant-Appellant.

Fifth District   No. 77-508

Opinion filed March 17, 1980.

John H. Reid and Daniel M. Kirwan, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Clyde L. Kuehn, State's Attorney, of Belleville (William S. Zale and Gillum Ferguson, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE HARRISON delivered the opinion of the court:

Defendant Alfred Atkins appeals from a judgment entered on a verdict returned by a jury in the circuit court of St. Clair County finding him guilty of armed robbery. He was sentenced by the trial court to a term of imprisonment of not less than 10 years nor more than 20 years. He contends that he was denied effective assistance of counsel. We disagree and therefore affirm the judgment of the circuit court.

The testimony at trial showed that on May 29, 1977, Mr. Baron Williams drove his blue Caprice four-door with a white vinyl top to Easton's Liquor Store in East St. Louis about 7:30 p.m. After purchasing some beer, he was confronted by a man who said, "Give me a beer." Mr. Williams did so, got in his car and started to drive away. At that point, this same man stuck a pistol in the driver's window of the car and told Mr. Williams to stop the car and turn the motor off. However, the assailant himself reached into the car and turned off the key while sticking a snub-nose revolver in Mr. Williams' face. Mr. Williams testified that it was daylight and he had a clear view of the man for approximately two to three minutes. The assailant told Mr. Williams to go back into the liquor store, which he did. The car was driven off and the police were called. Mr. Williams described to the police his assailant as a black male,

approximately 6 feet 1 inch tall, weighing approximately 180 pounds and wearing a light blue sleeveless shirt with dark trousers.

At approximately 9:40 p.m., Fairview Heights police were called to a traffic disturbance on Interstate 64 approximately one mile east of Highway 157. Upon arriving, Officer Dennis Popek and Detective Roger Richards saw a blue 1975 Chevrolet Caprice with a white vinyl top. The vehicle had extensive damage to the front end. They were also met by two individuals from St. Louis, Missouri, who indicated that the driver of the Caprice had been involved in numerous hit and run accidents in St. Louis, and that they had followed him to the scene where he left the car and ran into a wooded area. Also, at this time another citizen stopped and said that a man was walking down the side of the Interstate approximately 250 feet east of their location. The police officers got in their car and proceeded down the highway where they came upon a man wearing a light blue T-shirt and dark slacks. The officers identified that man at trial as the defendant. The defendant was placed under arrest for hit-and-run driving, as the officers had no knowledge of the armed robbery at that time, and was frisked for weapons but none were found. Another Fairview Heights police officer, Roland Burkhardt, arrived on the scene in time to witness the arrest. The defendant was asked to empty his pockets onto the hood of the police car, and Officer Burkhardt took possession of two 8-track tapes, two screwdrivers, a pair of wire cutters, a comb, and a tube of toothpaste, all of which Mr. Williams identified at trial as being in his car at the time of the robbery. Defendant was then handcuffed and placed in the police car.

Detective Richards testified that after defendant was placed in the car, he noticed him chewing on something. Asked what it was, defendant responded, "A watch." Richards told defendant to spit it out, which he did. Officer Burkhardt also took possession of the watch and he maintained control over all of the evidence seized. Mr. Williams subsequently identified the watch as his. Apparently, after defendant was taken to the Fairview Heights Police Department, a subsequent search showed him to be in possession of a certain amount of cannabis.

On May 31, 1977, Detective James Cowan of the East St. Louis police department conducted a lineup at the St. Clair County Jail after he learned that the Fairview Heights police might have a suspect in the Williams robbery. Detective Cowan took Mr. Williams to the lineup where the defendant was identified by Mr. Williams as his assailant. Mr. Williams also identified the defendant at trial. Following the lineup, Detective Cowan took possession of the aforesaid evidence from Officer Burkhardt.

Defendant was indicted for armed robbery on July 8, 1977. Prior to the trial on August 24, 1977, a hearing was held on defendant's motion to

suppress the identification. Testimony at the hearing indicated that the six participants in the lineup were all black males ranging in height from 5 feet 7 inches to 6 feet and weighing between 155 and 175 pounds. Defendant was 6 feet tall and weighed 170 pounds. A photograph of the lineup was taken but was not developed at the time of the hearing. It could have been obtained within approximately two hours. When the trial court mentioned that the hearing would be continued until later that day so that the photograph could be viewed, and that if the motion to suppress was denied, the trial would have to be reset, defendant's attorney, an assistant public defender from St. Clair County, waived introduction of the photograph, the motion was denied, and the parties proceeded to trial.

Defense counsel in his opening argument told the jury that defendant had been driven to Fairview Heights by a prospective buyer of the marijuana which was found in his possession. The attorney stated that the sale went awry and that defendant left and proceeded walking down Interstate 64 where he was subsequently arrested. The attorney apparently intended to establish an alibi for defendant, for he stated:

"He [defendant] was trying to sell dope but he was not attempting to take another person's car or wielding a weapon or was anywhere near the vicinity of Easton's Liquor where Mr. Baron Williams will testify that his car was taken from him."

Defense counsel elicited testimony from the Fairview Heights police officers as to whether any marijuana was found on defendant's person at the scene of the arrest, and again mentioned it in his closing argument, charging that "[t]hey took what possibly might have been a good marijuana bust and expanded it in what they thought would stick as an armed robbery."

Defense counsel also permitted testimony to be given to the effect that the Caprice had been involved in hit-and-run accidents prior to defendant's arrest, that the two St. Louis citizens identified the defendant at the scene as the man who got out of the car and entered the wooded area off the road, and that defendant was drunk and staggering at the time he was arrested.

Appellant contends that by his attorney's introduction into evidence and argument concerning the marijuana, hit-and-run accidents and his intoxication, his attorney's failure to object to these matters when broached by the prosecution, and his failure to request the trial court to instruct the jury not to consider the evidence of other criminal conduct, as well as the attorney's waiver of the introduction of the photograph of the lineup, he was denied effective assistance of counsel. We do not agree.

A review of the entire record shows that defense counsel was presented with a case of overwhelming evidence against his client. As

appellant readily admits in his brief, "Granted, the evidence of the armed robbery was substantial: an unimpeached identification corroborated by physical evidence and subsequent events, and uncontradicted by the defendant [who did not testify at trial]." In an effort to defend his client, the trial attorney attempted to establish an alibi, as can be seen from his opening statement. He tried to explain appellant's presence on Interstate 64 by discussing his futile attempt to sell marijuana in an area nearby. Had such an argument been convincing, it is possible that the jury could have returned a verdict of not guilty on the charge of armed robbery.

Such an attempt by defense counsel belongs in that realm of trial strategy and tactics which is left to the better judgment of the individual attorney. That the jury was not persuaded on the alibi defense does not mean that the attorney's assistance was ineffective, since errors in judgment or mistakes in strategy do not render a trial attorney's representation incompetent. (*People v. Murphy* (1978), 72 Ill. 2d 421, 437, 381 N.E.2d 677.) In order to sustain the position that his appointed counsel was ineffective, "the defendant must clearly establish: (1) actual incompetency of counsel, as reflected by the manner of carrying out his duties as a trial attorney; and (2) substantial prejudice resulting therefrom, without which the outcome would probably have been different. Due to the nature of the inquiry * * * each case will have to be judged on its own particular facts as they appear in the context of the proceeding under consideration." (*People v. Morris* (1954), 3 Ill. 2d 437, 449, 121 N.E.2d 810.) Defense counsel's actions here were but a valiant attempt in the face of overwhelming odds to defend his client, and do not at all evidence incompetence which caused appellant to suffer substantial prejudice. Such efforts do not come close to the cases cited by appellate counsel where trial attorneys engaged in prejudicial argument and questioning concerning other crimes evidence.

With respect to the evidence of hit-and-run accidents and intoxication, Officer Burkhardt testified that two pints of whiskey were discovered in the car, one of which was approximately one-half empty. Mr. Williams had stated that no other liquor was in his car except the beer he had just bought. Therefore, defense counsel tried to establish that no Stag beer cans were found in the Caprice by the police, although Mr. Williams had bought a six-pack of Stag prior to being robbed. Furthermore, while Detective Richards testified that defendant appeared to have been drinking, defense counsel got the officer to admit on re-cross-examination that defendant seemed coherent and that his answer to a question was understandable. Clearly, counsel was attempting to establish that someone other than appellant had stolen the car, involved himself in the accidents, obtained the unexplained liquor and left the car on the side of the road, when he argued in closing argument to the jury

that "the man who took the car and drove it to the spot where it stopped on the highway was bombed out of his mind * * *." This was but another tactical effort by the attorney to defend his client as best he could.

With respect to the waiver of the introduction of the lineup photograph, appellant argues that the decision appears to have been made as a matter of convenience to the attorney so that the trial would not be reset. However, it is also entirely plausible that counsel was attempting to obtain a fair and speedy trial for his client. Appellant had been arrested on May 29, 1977, and indicted on July 8, 1977. The trial was scheduled for August 24, 1977.

■■ Moreover, the evidence presented at the motion hearing and at trial indicates that the lineup was properly conducted. All of the participants were of the same race and sex as appellant and were of comparable height and weight. Mr. Williams made an identification of appellant two days after the robbery. He saw appellant for two to three minutes under good lighting conditions at close range. His description to the police was within one inch and 10 pounds of being correct, and the clothing description of his assailant matched exactly what appellant was wearing at the time of his arrest. There was ample time and opportunity to observe his assailant, and it is clear that the positive identification testimony of even one witness under these circumstances is sufficient to establish guilt beyond a reasonable doubt. (*People v. Johnson* (1979), 74 Ill. App. 3d 1037, 1048, 393 N.E.2d 40; *People v. Hefner* (1979), 70 Ill. App. 3d 693, 695, 388 N.E.2d 1059.) Moreover, there was no undue suggestiveness by the police prior to the lineup, and in that respect Mr. Williams' identification of appellant at the lineup and subsequently at trial was not tainted. (*People v. Holdman* (1979), 76 Ill. App. 3d 518, 524, 395 N.E.2d 72, 77-78.) The evidence revealed clearly that the lineup was conducted fairly and without improper suggestion. Trial counsel's waiver with respect to the photograph did not demonstrate ineffective assistance of counsel.

■■ That appellate counsel would have acted any differently at trial, through benefit of hindsight, is of little persuasion to this court. The strategy and tactics pursued by trial counsel were well within reason. The trial attorney engaged in extensive cross-examination of the witnesses, and made very strong arguments for the alibi defense. Under the circumstances of the total defense presented by the trial attorney, we conclude that he rendered effective representation to appellant in this case. Therefore, the judgment of the circuit court of St. Clair County is affirmed.

Judgment affirmed.

SPOMER and KASSERMAN, JJ., concur.