THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GREGORY SCHMITT, Defendant-Appellant.

Fifth District    No. 80-309

Opinion filed August 3, 1981.

John E. Juergensmeyer and James P. Leahy, both of Juergensmeyer, Zimmerman, Smith and Leahy, of Elgin, for appellant.

John Clemons, State's Attorney, of Murphysboro (Martin N. Ashley and Stephen E. Norris, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE HARRISON delivered the opinion of the court:

The defendant, Gregory Schmitt, appeals from a jury conviction on one count of rape and one count of deviate sexual assault. (Ill. Rev. Stat. 1979, ch. 38, pars. 11—1(a) and 11—3(a).) He was sentenced to a minimum term of six years imprisonment. We affirm the judgment of the trial court.

On the evening of June 1, 1979, the victim was jogging on the campus of Southern Illinois University at Carbondale. The defendant, also apparently a jogger, approached her from behind. He quickened his pace and drew close to her on the right side. She had an opportunity to view his

face for two or three seconds before he grabbed her around the neck with one arm and dragged her several feet away to a secluded area. There he forced her to engage in acts of oral and genital intercourse. She was unable to see him during the ordeal because he covered her face with her leotard. Her pleas for mercy were answered with repeated threats that he would kill her if she continued to speak or tried to cry out for help. When finished, he tied her hands and feet with shoestrings taken from her tennis shoes. She freed herself, dressed, ran to the Recreation Building and reported the incident to friends who encouraged her to see the police. After a brief session at the Women's Center, a counselor accompanied her to the hospital where she contacted the police. Within two or three days she assisted a police officer in composing a sketch of the defendant with the Identi-kit. Six weeks later, photographs were mailed to the prosecutrix while she was attending camp in Nevada. She examined them thoroughly and returned them with this written comment referring to picture No. 2, the defendant:

> "It looks very close but I don't remember the hair on his chest. I don't feel that I can say that it's him. If I could hear his voice, I could tell."

Pursuant to her request, a physical lineup was arranged two months later. There the victim positively identified the defendant Gregory Schmitt, as the man who had raped and sexually assaulted her. A jury trial was held on May 19, 1980, and the jury found him guilty on both counts.

Schmitt presents several issues for our consideration. First, appellant charges that a composite sketch was improperly excluded by the trial court. The sketch, compiled by the prosecutrix and a police artist, was offered by the defense to impeach the prosecutrix' identification testimony. Prior to the supreme court decision in *People v. Rogers* (1980), 81 Ill. 2d 571, 411 N.E.2d 223, a police artist's sketch constituted written hearsay evidence. *Rogers*, in effect, overruled those decisions which held sketches inadmissible either as hearsay or as prior statements consistent with a witness' testimony.

In *Rogers*, the sketch was offered by the State to corroborate the victim's story. The court emphasized that before the sketch is admissible, the victim must affirmatively verify the accuracy of the drawing and adopt the composite sketch as her own. (*People v. Rogers* (1980), 81 Ill. 2d 571, 579.) Schmitt makes a compelling argument that the rationale used by the supreme court to admit the sketch in *Rogers* could also be applied to the facts of his case. He reasons that it is entirely proper to impeach a witness with a drawing rendered at a former time when suggestions of others could not have intervened to create a fancied recognition in her mind. Even though the sketch would be submitted for impeachment

purposes, the hearsay pitfalls would be sidestepped as adeptly as they were in *Rogers* (*i.e.*, both the witness and the artist would be present in court and subject to cross-examination). This argument has merit. We might agree with appellant's reasoning if the complaining witness here had confirmed that the sketch was an accurate portrayal of her attacker. The record discloses no such confirmation. We cannot extend the holding in *Rogers* to cover a situation where the victim never adopted the drawing as an accurate portrayal of her attacker.

Because it was not adopted by her, the sketch cannot be used as a prior inconsistent statement to impeach her subsequent in-court identification. If the rule were otherwise and did not require the witness to adopt the drawing as an accurate portrayal, an inept artist could cause the witness to be impeached by a drawing which did not reflect the description given by the witness, even though that description may have been accurate. In other words, the artist could make a drawing that was not a likeness and attribute it to the witness, without the witness' having the opportunity to say that it did, or did not, look like the alleged perpetrator. It is also conceivable that a skillful artist could use the Identi-kit technique and yet be unable to produce a likeness. Recognizing that limitations do exist in the Identi-kit procedure, we deem it unsound to set a precedent whereby such sketches could be admitted without prior adoption and confirmation by the person primarily responsible for identification.

Another flaw in appellant's argument is the fact that the police officer called by appellant to verify the sketch in court was not the actual artist but was, instead, his supervisor. For the above reasons, the trial court did not err in refusing to admit the sketch into evidence.

Second, appellant challenges that the identification testimony offered at trial was tainted by illegal or prejudicial pretrial identification methods. With the burden of showing that impermissible pretrial confrontations occurred (*People v. McTush* (1980), 81 Ill. 2d 513, 520, 410 N.E.2d 861), he argues, first, that the photographic display mailed to the complaining witness while she attended camp in Nevada was unduly suggestive because Schmitt's picture was larger and showed more of his torso. We have viewed the display in question and determined that it does not amount to impermissible suggestion. Although the dissimilarities mentioned did exist, they were insubstantial and do not sustain appellant's objections. *People v. Witted* (1979), 79 Ill. App. 3d 156, 162, 398 N.E.2d 68.

He further challenges the subsequent in-person lineup identification because he was the only suspect from the photographic display who was included in the lineup. Illinois courts have consistently rejected this challenge. (*People v. Owens* (1977), 46 Ill. App. 3d 978, 991, 361 N.E.2d

644; *People v. Moore* (1977), 50 Ill. App. 3d 952, 958, 365 N.E.2d 1356; *People v. Thompson* (1981), 93 Ill. App . 3d 995, 1007, 418 N.E.2d 112.) Such a procedure does not render an identification unreliable, particularly when the prosecutrix clearly and convincingly confirms her identification at trial. Appellant has failed to prove the illegality of the pretrial identification procedures employed. Thus, his second challenge is without merit. *People v. Williams* (1980), 90 Ill. App. 3d 524, 528, 413 N.E.2d 60.

Next, Schmitt argues that he was not proved guilty beyond a reasonable doubt. Specifically, he contends that the evidence did not establish the use of force against the victim and it did not establish his identity. Having just decided that the prosecutrix' in-court and out-of-court identifications will withstand judicial scrutiny, it is unnecessary to discuss the latter point. Her testimony alone is sufficient to establish that it was Schmitt who performed the acts. *People v. Hine* (1980), 88 Ill. App. 3d 671, 677, 410 N.E.2d 1017.

■■ The questions of force and consent are also easily settled. Although no definite standard exists fixing the degree of force or the accompanying degree of resistance necessary, the Illinois Supreme Court has held that resistance is not required in situations where it would be futile and would endanger the victim's life. (*People v. Smith* (1965), 32 Ill. 2d 88, 92, 203 N.E.2d 879.) A victim need not resist if she is overcome by superior strength or paralyzed by fear. Consequently, reasonable acquiescence to threats of violence does not constitute consent. (*People v. Burgin* (1979), 74 Ill. App. 3d 58, 64, 392 N.E.2d 251.) We completely reject the standard suggested in appellant's brief (*i.e.*, that voluntary submission by a female who still has the power to resist, no matter how reluctantly yielded, amounts to her consent to the act). The victim testified that her assailant grabbed her around the neck from behind and dragged her into the woods. Her pleas for mercy were answered with threats that he would kill her if she cried out. He apparently carried no weapons, but this did not render the threats any less convincing. (*People v. Clarke* (1971), 50 Ill. 2d 104, 109, 277 N.E.2d 866.) The jury concluded that the victim's failure to resist was prompted by genuine concern for her life. The evidence is sufficient to support this conclusion and therefore we will not set it aside on review.

■■ Next appellant argues that the evidence did not establish venue. This court held, in *People v. Luigs* (1981), 96 Ill. App. 3d 700, that an appellate court may take judicial notice of the county or city in which a crime occurred if there are sufficient facts in the record to sustain such notice. Having reviewed the record and found sufficient evidence, we hereby take judicial notice of the fact that Southern Illinois University is located

at Carbondale and that the entire campus is situated within the County of Jackson in Illinois.

■■ Appellant also claims that he was ineffectively assisted by counsel at trial. To prove this charge, Schmitt must show not only that his attorney was actually incompetent, but also that his attorney's alleged incompetence resulted in such substantial prejudice to him that a different outcome would otherwise have resulted. (*People v. Greer* (1980), 79 Ill. 2d 103, 120-21, 402 N.E.2d 203.) He has not met either requirement and thus his argument fails. The mistakes allegedly committed by his appointed counsel extend to matters of judgment, discretion, and trial tactics. (*People v. Nutall* (1980), 91 Ill. App. 3d 758, 767, 415 N.E.2d 628.) Appellant cites these as examples: the attorney's failure to object to leading questions put to the complaining witness (the substance of which had been testified to earlier in trial); his failure to establish a crucial fact in the case (which the record shows to have been sufficiently established); and his decision to focus on one defense to the exclusion of others (which was a valid tactical maneuver). As this court stated in *People v. Atkins* (1980), 81 Ill. App. 3d 661, 665, 402 N.E.2d 383, the realm of trial strategy and tactics should be "left to the better judgment of the individual attorney."

Finally, the State requested the court to remand for sentencing because it felt that the trial judge failed to specify whether he imposed the 6-year term of imprisonment for the crime of rape or for the crime of deviate sexual assault, or both. Section 5—8—4 of the Unified Code of Corrections expressly states that prison sentences are presumed to be concurrent unless otherwise indicated. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—8—4(a).) Having read the report of the sentencing hearing, we conclude that the judge intended a 6-year term for the crime of rape to be served concurrently with a 6-year term for the crime of deviate sexual assault. In addition, we note that the sentencing hearing complied substantially with the requirements set forth in section 5—4—1. Ill. Rev. Stat. 1979, ch. 38, par. 1005—4—1.

Accordingly, we affirm the judgment of the trial court on all points raised.

Affirmed.

KASSERMAN, P. J., and WELCH, J., concur.