THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT KIRK CARMACK, Defendant-Appellant.

Third District   No. 80-545

Opinion filed February 8, 1982.—Rehearing denied March 15 and modified opinion filed March 16, 1982.

Robert Agostinelli and Frank W. Ralph, both of State Appellate Defender's Office, of Ottawa, for appellant.

Thomas J. Homer, State's Attorney, of Lewistown (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE ALLOY delivered the opinion of the court:

Defendant Robert Carmack appeals from his conviction, after a jury trial, for the offense of armed robbery. He was sentenced to a nine-year term of imprisonment for the armed robbery of the Graham Hospital Pharmacy, in Canton. On this appeal the defendant raises issues respecting the denial of his motion to suppress certain evidence seized at his residence, the effectiveness of his trial counsel, an evidentiary ruling by the trial court, and his sentencing.

The pertinent facts in the record indicate that on November 25, 1979,

the defendant Robert Carmack, wearing a red-quilted jacket and hat, entered the staff pharmacy at Graham Hospital. He was carrying a large dark revolver. He grabbed the staff pharmacist by the arm, stuck the gun in his back and then threatened to kill him unless the pharmacist gave him all of the morphine and dilaudid at the pharmacy. When the narcotics had been turned over to the robber, he told the pharmacist and three other persons there to go to a corner and stay there for two minutes. He told them that he and a friend would kill them if they came out of the pharmacy. Then he left.

On December 12, 1979, a little more than two weeks after the Graham Hospital robbery, a gunman fitting the same description of the hospital robber struck again. The armed robber, wearing a green-quilted nylon jacket, red ski mask and glasses, entered the Canham Pharmacy, on Farmington Road in Peoria County. He was carrying a sawed-off shotgun and he demanded all the morphine and dilaudid at the store. The owner informed him that he had no morphine or dilaudid, but only demerol. After taking that, the robber left.

Then, less than two weeks later, on December 21, 1979, there was a similar armed robbery at the Our X Pharmacy, in the city of Peoria. There a man, matching the description of the person involved in the two previously mentioned robberies, brandished a sawed-off shotgun to the manager of Our X and demanded all the store's morphine and dilaudid. When the manager explained that he had only demerol, the robber took three bottles of demerol, and he left.

Peoria County sheriff's deputy Kim Sylvester was investigating the Peoria County robberies. On December 26, 1979, around 4 p.m., he showed a series of photographs to two female employees of the Our X Pharmacy. Both employees picked the defendant Robert Carmack's picture, stating that his photo looked much like the armed robber. Sylvester, that same afternoon, located and talked with Gene Nelson, manager of the Our X store. Nelson, upon viewing the photographs, made an immediate identification of the defendant's picture, indicating that it was the robber. This positive identification by Nelson occurred around 6:30 p.m. Deputy Sylvester then returned to the sheriff's office where he conferred by phone with an assistant state's attorney about the existence of probable cause to arrest. After determining that he had probable cause to arrest, he then drove to Canton, Illinois, where the defendant was known to reside. Canton is in Fulton County.

Upon arriving in Canton, he met with Canton Police Chief Don Story. Thereafter, he, Story, and several other officers went to the defendant's residence on Vine Street in Canton. The time was somewhere between 8:30 and 9 p.m. When they arrived, they observed the defendant's auto parked in the driveway. Sylvester and Story, both in plain clothes,

and another uniformed officer went to the front door, while the other officers covered the back door. The officers knocked on the door, and the defendant Carmack answered, opening the door about a foot. The officers showed Carmack their identification, told him they were police officers and that they were there to arrest him. Their guns were drawn. Carmack stepped back and the officers opened the door fully, entering the house. When inside, they informed Carmack they were arresting him for the Peoria County armed robberies. They conducted an immediate pat-down search of Carmack's person. He was then handcuffed and read his *Miranda* rights. According to the defendant's testimony, the police then asked him if he would consent to a search of his residence, to which he refused, asking that they obtain a warrant. The defendant's wife was at home. Before returning to the station to obtain the warrant, the officers conducted a cursory examination of the other rooms in the residence, to locate any additional persons that might have been present. The officers, at the time, were aware that deadly weapons had been used in the robberies and Carmack, in one robbery, indicated he had an accomplice. The examination of the premises turned up no other person, but during it the officers did notice two ski jackets, similar to those described by the victims of the robberies, lying in plain view.

The defendant was permitted to dress fully and was then taken to the Canton police station, and then the county jail in Peoria. At the police station the officers contacted the State's Attorney's office in Canton to make arrangements to obtain a search warrant. Sylvester signed the warrant, giving the information he had received during his investigation and also referring to the nylon jackets observed during the initial search of the house. With the warrant, the officers returned to the Carmack residence and conducted a full search. They seized drug containers, a sawed-off shotgun, a red and white ski mask, the nylon jackets, and a pair of glasses. The articles were later used at the defendant's trial for the armed robbery of the Graham Hospital.

At the trial for that robbery, numerous persons testified about the circumstances of the robbery. Several persons present, although unable to identify the defendant positively, nevertheless testified that the jacket and glasses seized at defendant's house matched the apparel worn by the robber. One witness for the State, a pharmacist's technician, did make an in-court identification of the defendant Carmack as the armed robber. The other State's evidence came from employees of the Our X Drug Store that had been robbed within weeks after the Graham Hospital robbery. Three employees testified to the specifics of that robbery and then identified Carmack as the perpetrator. The manager of Our X further testified that the articles found in Carmack's home were similar to those

used by the Our X robber. He also identified several drug containers seized in the search as similar to those taken from Our X.

The defense presented no witnesses, and after instructions and argument, the jury returned its guilty verdict. The presentence report indicated that the defendant had three prior felony convictions. The court sentenced him to nine years in prison. From that conviction and sentence the defendant now appeals.

We would note that in the Peoria County cases, which are not before us on this appeal, the defendant eventually negotiated a plea, receiving a seven-year sentence on a guilty plea, with the charges in the other robbery being dropped. Any additional factual development of the Fulton County case will be contained in our treatment of the issues.

The first several issues raised by Carmack all center upon his motion to suppress the evidence seized in the search of defendant's home, after his arrest. The first issue is whether the court should have suppressed the evidence based upon the police officers' warrantless, nonconsensual entry into the defendant's home and the subsequent warrantless arrest there. The defense correctly notes that the United States Supreme Court, in *Payton v. New York* (1980), 445 U.S. 573, 63 L. Ed. 2d 639, 100 S. Ct. 1371, held that the fourth amendment prohibits warrantless entry into the home of a suspect, for the purpose of arrest, unless there is consent to the entry, or unless there exists exigent circumstances which justify proceeding without a warrant. The defense argues that the evidence in the instant case is insufficient to establish either consent or the requisite exigent circumstances. The State responds, arguing initially that the decision in *Payton v. New York* is to be applied prospectively only (*People v. Devine* (1981), 98 Ill. App. 3d 914, 424 N.E.2d 823), and that such application should except arrests made prior to the date of that decision. (See, *e.g.*, *Desist v. United States* (1969), 394 U.S. 244, 22 L. Ed. 2d 248, 89 S. Ct. 1030.) It should be noted, in this regard, that prior to *Payton* and the decision in *People v. Abney* (1980), 81 Ill. 2d 159, 407 N.E.2d 543, a warrantless arrest in the home was arguably permissible in Illinois if probable cause for the arrest existed. (See *People v. Devine* (1981), 98 Ill. App. 3d 914, 918-19; *People v. Denwiddie* (1977), 50 Ill. App. 3d 184, 365 N.E.2d 978, relying upon *People v. Johnson* (1970), 45 Ill. 2d 283, 259 N.E.2d 57, *cert. denied* (1972), 407 U.S. 914, 32 L. Ed. 2d 689, 92 S. Ct. 2445; Ill. Rev. Stat. 1977, ch. 38, pars. 107—2(c), 107—5(d).) The State, in seeking to affirm the denial of the suppression motion, also alternatively argues that the warrantless arrest of Carmack was justified under the exigent circumstances presented.

However attractive and well reasoned we find the State's argument concerning the appropriate prospective scope to be given *Payton* (see

*Desist v. United States; United States v. Peltier* (1975), 422 U.S. 531, 45 L. Ed. 2d 374, 95 S. Ct. 2313), a conclusion applying *Payton* only to those arrests made after it was decided would have little effect in this or other cases. The reason for that is that the Illinois Supreme Court in *People v. Abney* (1980), 81 Ill. 2d 159, 407 N.E.2d 543, concluded that under their prior decisions, warrantless arrests in the home were required to be justified by consent or exigent circumstances even before *Payton* was decided. (*People v. Abney* (1980), 81 Ill. 2d 159, 167-68. But see *People v. Johnson; People v. Devine; People v. Denwiddie.*) The result is that even were we to conclude that *Payton* does not apply, because of its prospective application, nevertheless the rule of *Payton,* as expressly enunciated in Illinois in *People v. Abney,* would still control. We turn, therefore, to *Abney* and the question of exigent circumstances.

·*Abney* involved the situation where the victim of a beating had told an investigating officer that he had been attacked by the defendant near the defendant's home. The beating, administered with an iron bar and a .9-millimeter pistol, occurred only shortly before the officers obtained the information. The victim also told police the assailant's name and address, informing them he had walked home after the beating. The officers went to the defendant's residence, arriving about 1½ hours after the assault. They knocked on the door, announcing their office. The door swung open and they entered. A .9-millimeter bullet was in plain view on the couch. The trial court suppressed evidence seized, and the suppression was affirmed on appeal. The supreme court reversed, however, concluding that exigent circumstances were presented which justified proceeding without an arrest warrant. (81 Ill. 2d 159, 169-74.) In the majority opinion, the court set forth various relevant considerations on the question of the presence of exigent circumstances: (1) whether prompt action was needed, due to the nature and timing of the offense or the possibility of the suspect's escape; (2) whether there was any deliberate or unjustified delay during which time a warrant could have been obtained; and (3) whether the officers reasonably believed the accused was armed and exhibited signs of violent behavior. In addition to these three factors, the court also noted others to be considered: (4) whether there was clear probable cause to arrest; (5) whether there was a clear identification of the accused; (6) whether the officers reasonably believed that the accused was in the premises; and (7) whether the entry was peaceable. The court made it clear that these factors, viewed with the totality of the circumstances, must be considered and balanced when determining whether a warrantless arrest in the home is reasonably justified. The court also emphasized:

> "We caution that each case must be decided on the basis of the facts presented. [Citation.] The guiding principle is reasonableness

under constitutional provisions governing searches and seizures. [Citations.] In determining whether law-enforcement officials acted reasonably in a given case, courts should be careful to judge the circumstances as known to the officials at the time they acted. [Citation.] Unknown and subsequent unanticipated events, such as the suspect's peaceful surrender in this case, should not be considered in assessing the propriety of the official's initial reaction. [Citations.] Finally, lest officials be given free rein, it should be remembered that warrantless police action 'must be "strictly circumscribed by the exigencies which justify its initiation" ' [Citations.]" (81 Ill. 2d 159, 173-74.)

With the court's guidance and admonitions in mind, we turn to the facts involved in the instant case.

Considering the need for prompt action, we first must acknowledge that there is nothing to indicate that the officers had reason to fear Carmack might escape in the time it would have taken to obtain a warrant. However, as to the question of timing, while the most recent robbery was five days previously, it is relevant that Deputy Sylvester had obtained the identification evidence only hours before the arrest. More significantly in this case, the officers were faced with a situation wherein they reasonably believed the defendant had committed a series of drug-related armed robberies in the area within a month. Furthermore, given the object of each robbery (morphine and dilaudid) and the frequency of the robberies, it would have been reasonable to conclude that they were committed to support a drug habit. Given all of these circumstances, the officers could reasonably have believed that the defendant was capable and likely to continue his robbery spree and that the safety of the communities in the area demanded the promptest police action.

As to the second factor, there was no showing of a deliberate or unjustified delay by the officers, during which time a warrant could have been obtained. Officer Sylvester moved promptly after receiving the identification information around 6:30 p.m. He conferred with the State's Attorney's office, to assure probable cause for the arrest, and then promptly drove to Canton, where he joined officers there. They arrived at the defendant's house around 8:30 p.m. Thus, the arrest occurred within three hours after the police received the identification information conclusively establishing probable cause for the arrest. Additionally, we again emphasize that at the time of the arrest, being December 26, 1979, the State's Attorney and the officer were justified in relying upon their ability to make an arrest of an accused without a warrant, even at his residence, when they had probable cause. Even the United States Supreme Court in *Payton* recognized that Illinois was one of 24 jurisdictions that permitted warrantless entries and arrests. (445 U.S. 573, 598, 63

L. Ed. 2d 639, 658, 100 S. Ct. 1371, 1386.) In the instant case, the officers' reasonable belief that at the time their actions conformed to the law is a circumstance to be taken into consideration in determining the reasonableness of their actions. In any event, we find no deliberate or unjustified delay.

The third factor, focusing upon the dangerousness of the suspect, is solidly supportive of prompt action, for the officers had ample reason to believe the suspect was armed and potentially dangerous. He had used a sawed-off shotgun in two robberies and a revolver in the other. He had threatened to kill more than one person during the commission of the robberies. His focus in all of the robberies was hard narcotics. The officers were justified in proceeding upon an assumption that they were dealing with a dangerous individual. Additionally, there was strong and clear probable cause for the arrest, based upon a positive identification of the defendant as the armed robber. The Canton police knew where his residence was located in the city, and when the officers arrived, Carmack's auto was in the driveway. Finally, while the entry was made with guns drawn, a precaution unquestionably justified under the circumstances, the officers did knock, announce their presence, and then entered only after the defendant had responded and opened the door. There was no unannounced forcible entry through the door, and except for the reasonable precaution of drawn guns, the entry was peaceful.

■■ Giving due consideration to the above-mentioned factors, and to the overall circumstances of the situation at the time of the arrest, we conclude that the arrest, without a warrant, was reasonable and not violative of the fourth amendment.

■■ After the arrest, the police conducted a room-by-room search of the house to secure it. There was testimony both that another person was known to stay at or visit the house frequently and that Carmack had boasted of a dangerous accomplice in his robbery of Graham Hospital. No items were seized during the search for other persons, although certain items in plain view were noticed. After determining that no other suspects were present on the premises, two officers stayed with the defendant's wife, while several returned to get a search warrant. The warrant was later issued and various items of evidence seized. The defense contends that even if the arrest was legal, the evidence ought to have been suppressed because it was the fruit of the warrantless visual search for other persons at the time of the arrest. We agree, however, with the trial court and the State that the search was incident to Carmack's arrest and reasonable under the circumstances. In *People v. Williams* (1974), 57 Ill. 2d 239, 246, 311 N.E.2d 681, the Illinois Supreme Court noted that such questions must be determined on the particular facts of each case, with consideration given the presence of weapons or other

persons who might pose a threat to the officers in making the arrest. In the case at bar it was reasonable to conduct the house search, where the police reasonably believed a dangerous accomplice might have been staying at the house. The court, in *Abney*, cautioned against judging police actions based upon knowledge acquired after the fact. Here, given the situation presented to them, the search of the house was reasonable. It is relevant also, to the reasonableness of the search, that no items were seized during it and that it was strictly limited to the purpose of searching out other persons. Prior to a full search of the premises, the police obtained a warrant, the sufficiency of which is unchallenged.

The defendant's next argument seeking a suppression of the evidence focuses upon the decision of the trial court in the related Peoria County cases, based upon the other two robberies. In the initial Peoria County prosecution, which began prior to pretrial matters in the Fulton County case before us, the trial court had denied the motion to suppress. The case proceeded then to a guilty verdict after jury trial. On post-trial motion, the defense argued that the *Payton* decision required that certain evidence be suppressed because of the warrantless arrest of the defendant in his Canton home. The trial court agreed, and on July 18 it reversed its earlier decision on the suppression motion, and it ordered a new trial without that evidence. In the case at bar, the Fulton County case, arguments on the suppression motion were heard on July 17, and on July 21 the trial court in Fulton County entered its order denying the motion to suppress. The defense now argues that the Peoria County decision collaterally estopped the Fulton County State's Attorney, in the Fulton County case, from relitigating the fourth amendment issue of the reasonableness of the arrest. Though the issue was not raised in the trial court, the defense contends for application of the plain error doctrine (Ill. Rev. Stat. 1977, ch. 110A, par. 615). We disagree.

■■ The doctrine of collateral estoppel, in the criminal context, was aptly stated by the Illinois Supreme Court in *People v. Ward* (1978), 72 Ill. 2d 379, 382, 381 N.E.2d 256: ·

> " "\* \* \* "The doctrine of collateral estoppel, which bars relitigation of a decided question, applies to criminal as well as civil proceedings. [Citations.] This was noted in *Ashe v. Swenson*, 397 U.S. 436, 25 L. Ed. 2d 469, 475, 90 S. Ct. 1189, where, in the course of describing the doctrine, the court said:
>> ' " Collateral estoppel" is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. \* \* \*' \* \* \*" \* \* \*' "

As to the requirement of a valid and *final* judgment, the court noted in *Relph v. Board of Education* (1981), 84 Ill. 2d 436, 442-44, 420 N.E.2d 147, that finality, for purposes of applying *res judicata* (including therein collateral estoppel), required that the potential for appellate review had been exhausted. So long as the cases in question remained subject to appellate review, that is, so long as they were in the appellate process, the legal decisions therein were merely law of the case in the individual cases, and could not be the basis for application of *res judicata*. The primary problem with the decision sought to be relied upon by the defendant, that being the decision in the Peoria County case, is that there had been no final judgment in that case. The time for appeal of the court's decision had not run. At the time the Fulton County court heard arguments on the suppression motion, the Peoria County ruling had not been handed down. When the Fulton County decision was made, the Peoria County decision was not final, in that it was subject to possible review on the appellate level. Thus, the basic requirement for application of the doctrine of collateral estoppel was lacking.

Since collateral estoppel did not apply to the Fulton County case on the motion to suppress, we find no plain error in failing to apply it. Nor can we conclude that the failure of trial counsel to raise the inapplicable doctrine constituted ineffective assistance of counsel. Pertinent thereto as well is the fact that the hearing on the suppression question in Fulton County was held before any decision had been reached on the post-trial motion in the Peoria County case.

The next issue raised by the defense is whether the court erred in refusing to admit into evidence certain altered photographs, which the defense wished to use for impeachment purposes. The State had shown, in its case in chief, that certain witnesses had identified the defendant's photograph from a photographic lineup. The defense wished to bring forth that several of those witnesses had been unable to identify the defendant's photograph from a photo lineup, where the photographs had been altered by a police artist so as to depict the robber as wearing a cap, glasses, and a "blotched" lower face. The trial court denied admission to the artist-altered photographs. Under the recent Illinois Supreme Court case of *People v. Rogers* (1980), 81 Ill. 2d 571, 411 N.E.2d 223, out-of-court identification evidence is admissible, if certain requirements are met so as to sidestep hearsay problems. (81 Ill. 2d 571, 579-81.) *Rogers* held that artists' sketches would be admissible where they were adequately authenticated and where the declarant, upon whose statements the sketch was based, testified and was thereby subjected to cross-examination. *Rogers* itself dealt with such evidence being used by the State to corroborate a witness' in-court and lineup identifications. However, its basic reasoning applies as well when such evidence (sketches or artist-

altered photographs) is sought to be used for impeachment purposes. *People v. Tyllas* (1981), 96 Ill. App. 3d 1, 4, 420 N.E.2d 625; *People v. Schmitt* (1981), 99 Ill. App. 3d 184, 424 N.E.2d 1267.

■■ In the instant case, photographs of the defendant had been altered to conform to the descriptions given by various witnesses to the robberies. The altered photographs had then been shown to the witnesses for identification. The witnesses were unable to identify the altered photographs as being of the perpetrator of the robberies. It is clear that this failure to identify the altered photographs of the defendant had substantial probative value and that the photos should have been admitted into evidence for impeachment purposes. Whatever the foundation requirements are with respect to police sketches (compare *People v. Tyllas* (1981), 96 Ill. App. 3d 1, 420 N.E.2d 625, with *People v. Schmitt* (1981), 99 Ill. App. 3d 184, 424 N.E.2d 1267), a proper foundation existed in the instant case. In the first place, these were altered photographs, not police sketches, and the original photographs had been identified by the witnesses. Secondly, the State had offered the original photographic lineup into evidence to support its presentation, and it had also asserted, in argument, that the altered photographs did indeed strongly resemble the defendant. Under the circumstances, the altered photographs should have been admitted into evidence for impeachment purposes. However, because the evidence of guilt is so overwhelmingly against the defendant, this error by the trial court in denying admission of the altered photographs was harmless.

■■■ The final issues raised concern the sentencing. The trial court, in sentencing the defendant to a nine-year term, found as aggravating factors that the defendant had received compensation for committing the offense and that his conduct had threatened serious harm to another. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3.2.) As to the finding with regard to compensation for the offense, under *People v. Conover* (1981), 84 Ill. 2d 400, 419 N.E.2d 906, that finding was improper, since the only compensation was the proceeds from the armed robbery. While the finding was improper, we find no reversible error therein. As to the second aggravating factor, the threat of serious harm, we find no error in the court's reliance thereon in sentencing. (*People v. Robinson* (1980), 89 Ill. App. 3d 211, 411 N.E.2d 589.) While armed robbery, by definition, involves the use of force or threat of its use (Ill. Rev. Stat. 1979, ch. 38, par. 18—2), it does not necessarily follow that a threat of serious harm is always involved. In the instant case, the presence of the revolver, stuck in the pharmacist's back, provided the use of force and its threatened use. In addition, the defendant expressly threatened the victims of the robbery with death. That threat is not inherent in the offense of armed robbery, and it is cognizant under section 5—5—3.2, which permits a trial court to

consider as an aggravating factor that the defendant threatened serious harm. We find no error in the court's consideration of the defendant's conduct in arriving at its sentencing decision. Moreover, even were we to find that this factor was improperly considered, the sentence by the trial court would still stand. Given the facts and circumstances of the armed robbery herein, plus the evidence that the defendant had three prior felony convictions, the nine-year sentence was clearly justified. We find no abuse of discretion and no reversible error.

The judgment of the Circuit Court of Fulton County is affirmed.

Affirmed.

BARRY and STOUDER, JJ., concur.

ADDENDUM TO OPINION

Pursuant to petition for rehearing and upon a reconsideration we have determined that this cause is affirmed but it is remanded to the Circuit Court of Fulton County, solely for the purpose of resentencing.

Affirmed and remanded.